UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABBVIE INC. and
ABBVIE BIOTECHNOLOGY LIMITED,

        Plaintiffs-Counterclaim-Defendants,

    v.

THE MATHILDA AND TERENCE
KENNEDY INSTITUTE OF
RHEUMATOLOGY TRUST,

        Defendant-Counterclaim-Plaintiff.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 3, 2013

11 Civ. 2541 (PAC)

**MEMORANDUM**
**OPINION & ORDER**

      Following a bench trial, the Court entered a Declaratory Judgment in favor of Plaintiffs-Counterclaim-Defendants Abbvie Inc. and Abbvie Biotechnology Ltd.'s (collectively, "Abbott") that certain claims of Defendant-Counterclaim-Plaintiff The Mathilda and Terence Kennedy Institute of Rheumatology Trust's ("Kennedy") U.S. Patent No. 7,846,442 (the "'442 patent") are invalid for obviousness-type double patenting over Kennedy's U.S. Patent No. 6,270,766 (the "'766 patent").  Abbvie Inc. v. The Mathilda and Terence Kennedy Inst. of Rheumatology Trust, --- F. Supp. 2d ---, 2013 WL 3853149 (ECF No. 120).  Prior to trial, the Court had stayed Kennedy's counterclaims that did not address the validity of the '442 patent, pending resolution of the parties' competing patent validity claims.  (ECF No. 67.)  The Court now turns to Abbott's motion to stay these counterclaims pending arbitration, and grants the motion.

## BACKGROUND[1]

After the Court denied Kennedy's motion to dismiss this action for lack of subject matter jurisdiction (ECF No. 25), Kennedy filed an Amended Answer and Counterclaims based on the following allegations. (ECF No. 40.)

In January 1992, Kennedy entered into a Research and Licensing Agreement with Centocor, Inc., which gave Centocor the right to, inter alia, grant sublicenses for uses covered by Kennedy's '766 patent. (Counterclaims ¶ 41.) See Abbvie, 2013 WL 3853149, at *6 (findings of fact ¶ 34). In December 2002, Centocor and Abbott entered into an agreement (the "Centocor-Abbott Agreement"), which, inter alia, granted Abbott a sublicense for certain uses covered by the '766 patent, including Abbott's sales of its Humira drug for the treatment of rheumatoid arthritis. (Counterclaims ¶ 42.) See Abbvie, 2013 WL 3853149, at *41 (findings of fact ¶ 266). In July 2004, Kennedy and Centocor amended their 1992 agreement to provide that Abbott make its royalty payments directly to Kennedy. (Counterclaims ¶ 44.). Kennedy and Abbott, however, disputed the amount of royalties owed and the methodology for calculating them. (Id. ¶ 45.) In October 2008, Kennedy, as third party beneficiary of the Centocor-Abbott Agreement, initiated an arbitration against Abbott regarding this dispute. (Id. ¶ 46.) See Centocor, Inc. v. The Kennedy Institute of Rheumatology Trust, No. 08 Civ. 8824 (DC), 2008 WL 4726036, at *3 (S.D.N.Y. Oct. 29, 2008). The arbitration resulted in an award that established a methodology for calculating the royalties Abbott owed Kennedy. (Counterclaims ¶ 47.) This arbitration award was subsequently confirmed by a judgment of this court. (Id. ¶ 49.) See Abbott Biotechnology Ltd. v. The Mathilda and Terence Kennedy Institute of Rheumatology Trust, No. 09 Civ. 3872 (DC) (S.D.N.Y. Apr. 29, 2009), ECF No. 5.

---

[1] The Court assumes familiarity with its previous opinions and orders in this case, and recites only those facts relevant to the instant motion.

Following the arbitration award, on March 27, 2009, Kennedy, Abbott, and Centocor agreed to a modification of the calculation methodology and to a procedure for royalty payments (the "March 27, 2009 Letter Agreement"). (Counterclaims ¶ 48.) Kennedy now asserts that, since January 2009, Abbott has not adhered to the applicable methodology for calculating royalties. (Id. ¶ 50.)

In its remaining counterclaims Kennedy seeks damages for underpaid royalties owed pursuant to the March 27, 2009 Letter Agreement (Counterclaim II); a declaratory judgment of the coverage of the claims of the '442 patent (Counterclaim III); a declaratory judgment of Abbott's failure to comply with the previous federal judgment confirming the arbitration award (Counterclaim IV); and breach of the March 27, 2009 Letter Agreement (Counterclaim V).[2] Abbott moved to stay each of Kennedy's counterclaims II through V pending arbitration pursuant to the arbitration provision in the Centocor-Abbott Agreement. (ECF No. 46.) By an order dated August 10, 2012, the Court stated that "[t]here are good reasons to believe" that these counterclaims are subject to arbitration, and ruled that "[a]t a minimum, [Kennedy's] counterclaims II–V are stayed pending a trial on [Abbott's] declaratory judgment claim and [Kennedy's] first counterclaim." (ECF No. 67.) As the Court has resolved the validity of the '442 patent, it now addresses Abbott's motion to stay Kennedy's remaining counterclaims.

## DISCUSSION

The Federal Arbitration Act ("FAA") "'declares a national policy favoring arbitration,'" Nitro-Lift Tech., L.L.C. v. Howard, 133 S. Ct. 500, 503 (2012) (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)), and "provides that a 'written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

---

[2] Kennedy's Counterclaim I regarding the validity of the '442 patent was resolved by the Court's June 20, 2013 Findings of Fact and Conclusions of Law.

3

arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Id. (quoting 9 U.S.C. § 2). When there is an enforceable agreement to arbitrate, the FAA directs a court to grant a stay upon the application of one of the parties to the litigation, if it "involves an issue referable to arbitration." 9 U.S.C. § 3; see Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Express Fin. Advisors Secur. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (citations omitted). Any ambiguity in an agreement to arbitrate must be resolved in favor of arbitration. Bechtel do Brasil Construções Ltda. v. UEG Araucária Ltda, 638 F.3d 150, 153 (2d Cir. 2011).

The Centocor-Abbott Agreement provides, in relevant part, that

In the event of a dispute between the Parties arising under or regarding the interpretation of this Agreement, such dispute will be resolved exclusively by the Alternative Dispute Resolution procedure specified in [the Agreement]. (ECF No. 20 at ¶ 9.12.)

Kennedy argues that this provision limits the scope of arbitrable disputes to those that require "interpretation of" the Centocor-Abbott Agreement (i.e., turn on conflicting interpretations of the language of the agreement), which it claims none of the remaining counterclaims do. This position is contradicted by, inter alia, the words of the agreement at issue, other courts' interpretations of the very same language, and Kennedy's own prior positions in this litigation.

The language that disputes "arising under or regarding the interpretation of" the Centocor-Abbott Agreement must be resolved "exclusively" by arbitration demonstrates that the parties intended arbitration to be the primary method for dispute resolution. Kennedy's attempts to limit this language to disputes regarding the Agreement's interpretation, and thus construe this

4

provision to eliminate the import of the "arising under" language, are unavailing. See Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124 (2d Cir. 2003) ("In interpreting the parties' [agreement] we are, of course, obliged to give full meaning and effect to all of its provisions . . . . [U]nder New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." (internal quotations omitted)).

Furthermore, the mere fact that the arbitration provision utilizes the phrase "arising under" does not render this provision "narrow." While the Second Circuit has previously held that the phrase "arise under [this agreement]" in an arbitration clause renders such clause narrow, if unaccompanied by an expansive phrase, see In re Kinoshita & Co., 287 F.2d 951, 953 (2d Cir. 1961), subsequent rulings by the Second Circuit have limited this holding to its precise facts. See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 225 (2d Cir. 2001). The Second Circuit has further recognized the weak underpinning of Kinoshita in light of "the Supreme Court's more recent decisions emphasizing the strong federal policy in favor of arbitration" and the frequent criticism to which the ruling has been subjected. ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 27 (2d Cir. 2002). "Indeed, the Second Circuit has often found arbitration clauses to be distinguishable from the clause in Kinoshita—and therefore to be 'broad' clauses—where the relevant textual differences appear minimal." China Auto Care, LLC v. China Auto Care (Caymans), 859 F. Supp. 2d 582, 586 (S.D.N.Y. 2012). That the arbitration provision here uses the disjunctive "or" signifies that disputes "arising under" the Centocor-Abbott Agreement are distinguishable from those "regarding the interpretation" of the Agreement, and differentiates the provision from that in Kinoshita. See Cresvale Int'l, Inc. v. Reuters Am., Inc., 684 N.Y.S.2d 219, 222 (1st Dep't 1999)

(holding that words in a contract clause stated in the disjunctive must be considered separately (citing Coutu v. Exch. Ins. Co., 579 N.Y.S.2d 751, 752 (1st Dep't 1992)); e.g., China Auto Care, 859 F. Supp. 2d at 587 ("That it reaches issues beyond those of contractual interpretation renders the Arbitration Clause distinguishable from the Kinoshita clause.")

As Abbott further highlights, several other courts have construed this exact language and accorded it the presumption of arbitrability. For example, in the context of the prior arbitration between Abbott and Kennedy over the underpayment of royalties pursuant to the very same Centocor-Abbott Agreement, Judge Chin rejected Centocor's argument that this issue was not subject to arbitration, stating that "[i]t is difficult to imagine a claim that could be more integrally related to the contract containing the arbitration clause than Kennedy's claims against . . . Abbott." Centocor, 2008 WL 4726036, at *3 (quotation omitted).

Finally, Kennedy's current position contradicts the arguments it previously made to this Court. In support of its motion to dismiss Abbott's claim regarding the invalidity of the '442 patent, Kennedy argued that there was no Article III case or controversy before the Court because "any dispute about the payment of royalties is subject to mandatory arbitration." (ECF No. 19 at 1; see also, e.g., id. at 3 ("The Abbott/Centocor Agreement contains a mandatory arbitration provision which provides that disputes arising under the agreement, including any disputes pertaining to either party's right or obligations, shall be resolved by arbitration"); id. at 14 (arguing that "disputes arising under the Abbott/Centocor Agreement are subject to a mandatory arbitration provision").) Kennedy's assertion that it has changed its position "upon further consideration" is highly dubious.

Under a proper interpretation of the arbitration clause here, the Court cannot "say with positive assurance" that it does not cover Kennedy's counterclaims. In re Am. Express, 672 F.3d

6

at 128.  Counterclaim II seeks damages for Abbott's alleged failure to properly calculate the royalties it owes Kennedy pursuant to the Centocor-Abbott Agreement.  Similarly, Counterclaim IV alleges that Abbott has failed to comply with the arbitration award and the court's judgment confirming it because Abbott has improperly calculated the royalties under the same agreement.  Both of these disputes require interpretation of the Centocor-Abbott Agreement and resolution of factual issues as to how the royalty payments should be calculated.  Counterclaim V alleges that Abbott breached the March 27, 2009 Letter Agreement, which allegedly modified by Centocor-Abbott Agreement, by not adhering to its methodology for calculating royalties.  For the reasons set forth in Abbott's memoranda of law, it cannot be said that these claims do not "arise under" the underlying Centocor-Abbott Agreement.

With regard to Counterclaim III, Kennedy asserted that "Abbott's ongoing or planned activity of continuing its sales of HUMIRA® for adjunctive use with methotrexate to treat rheumatoid arthritis falls within the scope of at least one claim of the '442 patent[,]" and asked the Court to enter a declaratory judgment that such activity "comes within the scope of at least one valid claim of the '442 patent."  (ECF No. 40 ¶¶ 84, 85.)  To the extent that this counterclaim has not been mooted by the Court's determination that claims 1 through 7, 13, 14, and 17 through 20 of the '442 patent are invalid for obviousness-type double patenting, this counterclaim is also subject to arbitration because it inherently requires the construction of several terms as defined in the Centocor-Abbott Agreement.

## CONCLUSION

For the foregoing reasons, Abbott's motion to stay Kennedy's counterclaims pending arbitration is GRANTED.

Dated: New York, New York
       September 3, 2013

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge